IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEMICA D. HAWKINS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:12-CV-1125 ) |
| THE CENTER FOR SPINAL SURGERY, | ) Judge Sharp ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM

Pending before the Court are two of Defendant, The Center for Spinal Surgery's ("CSS"), motions. First, CSS filed a Renewed Motion for Directed Verdict on Plaintiff's Claim for Retaliation Pursuant to Fed. R. Civ. P. 50(b) or, in the Alternative, Motion for a New Trial Pursuant to Fed. R. Civ. P. 59. (Docket No. 264). Second, CSS filed a Renewed Motion for Judgment as a Matter of Law on Punitive Damages; or, in the Alternative, Motion for a New Trial; or, in the Alternative, Motion for Remittitur. (Docket No. 266). Plaintiff Demica D. Hawkins ("Ms. Hawkins") filed a Response to each motion. (Docket No. 269). CSS filed Replies. (Docket Nos. 290 & 291). Having reviewed the motions and briefs, the Court will deny both of CSS's Motions for Judgment as a Matter of Law.[1] (Docket Nos. 264 & 266). The Court will recommend a remittitur of $73,225.55, which will reduce the punitive damages award to

---

[1] Although Defendant labeled one motion a Renewed Motion for Directed Verdict, (Docket No. 264), and the second motion a Renewed Motion for Judgment as a Matter of Law, (Docket No. 266), these terms are synonymous, and the Court will refer to both as Motions for Judgment as a Matter of Law. Fed. R. Civ. P. 50 note (1991) ("If a motion is denominated a motion for directed verdict or for judgment notwithstanding the verdict, the party's error is merely formal. Such a motion should be treated as a motion for judgment as a matter of law in accordance with this rule.").

1

$219,676.65. The Court will conditionally grant CSS's Motions for a New Trial. (Docket Nos. 264 & 266).

## BACKGROUND

Ms. Hawkins is a black woman who worked as an Accounts Payable Coordinator within CSS's Business Department. Ms. Hawkins was employed in this role at CSS from February 2009 until March 1, 2013. Throughout her employment, Ms. Hawkins filed two separate EEOC complaints claiming racial discrimination and retaliation by CSS.

Following the EEOC process, Ms. Hawkins filed this suit on October 30, 2012. At the time Ms. Hawkins filed this lawsuit, she was in the third trimester of pregnancy. She accordingly filed for and received FMLA maternity leave from CSS, and Ms. Hawkins began her leave on December 12, 2012, with a presumptive return date of March 1, 2013. On January 28, 2013, Ms. Hawkins received a letter from Kathy Watson, Administrator in Chief of Nursing for CSS, informing Ms. Hawkins that her position was being eliminated. In Ms. Watson's letter, she stated that the hospital was implementing a new electronic health records system called Cerner; that Ms. Hawkins' accounts payable function was no longer needed under the new system; that all twelve of the sister hospitals were impacted by the changes; that CSS was transferring its revenue cycle functions to a facility in Texas; and that at least two other positions within CSS's business office were also being eliminated as part of the transition.

Following her termination, Ms. Hawkins filed an Amended Complaint that included claims for retaliation and discrimination under Title VII, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4–21–101(a)(1); and an interference claim under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. (Docket No. 63). CSS's Motion for Summary Judgment was granted as to all of Ms. Hawkins'

claims except for two: the retaliation claim and FMLA interference claim in regards to her 2013 termination. (Docket No. 103). At trial, Ms. Hawkins argued that CSS retaliated against her for engaging in protected activity—the filing of this lawsuit—by firing her. She also claimed that CSS violated her right to return to her job, or an equivalent job, following her maternity leave and thereby violated her rights under the FMLA. CSS maintained that Ms. Hawkins was fired because her job duties were no longer necessary due to the implementation of the new computer system, Cerner.

After a four day trial, the jury returned a verdict in favor of Ms. Hawkins on her claim that she was terminated "in retaliation for engaging in protected activity under Title VII, § 1981, or the THRA[.]" (Docket No. 253). However, the jury found that Ms. Hawkins did not prove her FMLA interference claim. (Id.). Following the verdict, the jury awarded Ms. Hawkins $29,290.22 for back pay, $1 in compensatory damages, and $292,902.20 in punitive damages. (Id.). CSS then filed the pending motions.

## ANALYSIS

I. **Motions for Judgment as a Matter of Law**

CSS has filed Renewed Motions for Judgment as a Matter of Law on the issues of Ms. Hawkins' retaliation claim as well as punitive damages. (Docket Nos. 264 & 266). For the following reasons, both Motions for Judgment as a Matter of Law will be denied.

A. Legal Standard for Judgment as a Matter of Law

A renewed motion for judgment as a matter of law "may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." Arnold v. Wilder, 657 F.3d 353, 363 (6th Cir. 2011). "In entertaining a motion

for judgment as a matter of law, the court is to review all evidence and draw all reasonable inferences in the light most favorable to the non-moving party, without making credibility determinations or weighing the evidence." Jackson v. FedEx Corp. Servs., Inc., 518 F.3d 388, 392 (6th Cir. 2008) (citing Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 150–51 (2000)). "In other words, the decision to grant judgment as a matter of law or to take the case away from the jury is appropriate 'whenever there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ.'" Id. (quoting Jackson v. Quanex Corp., 191 F.3d 647, 657 (6th Cir.1999)).

B. CSS's Motion for Judgment as a Matter of Law on CSS's Liability for Retaliation (Docket No. 264)

**1. Legal Standard for Retaliation**

In order to be successful on a retaliation claim, Ms. Hawkins needed to prove: (1) she engaged in activity protected by Title VII, 42 U.S.C. § 1981, or the THRA; (2) this protected activity was known to CSS; (3) CSS then took adverse employment action against Ms. Hawkins; and (4) there was a causal connection between the protected activity and the adverse employment action against Ms. Hawkins. See Morris v. Oldham Cty. Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000) (applying this framework to a Title VII retaliation claim); Noble v. Brinker Int'l, Inc., 391 F.3d 715, 720 (6th Cir. 2004) ("The elements of [a] *prima facie* case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and § 1981."); Newman v. FedEx Corp., 266 F.3d 401, 406 (6th Cir. 2001) ("Tennessee courts have looked to federal case law applying the provisions of the federal anti-discrimination statutes as the baseline for interpreting and applying the Tennessee Human Rights Act.").

4

"If and when a plaintiff has established a *prima facie* case, the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." Morris, 201 F.3d at 792–93 (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). "The plaintiff, who bears the burden of persuasion throughout the entire process, then must demonstrate 'that the proffered reason was not the true reason for the employment decision.'" Id. (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981)). The plaintiff also needs to establish "but-for" causation, meaning that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." EEOC v. New Breed Logistics, 183 F. 2d 1057, 1066 (6th Cir. 2015).

### 2. CSS's Argument and Evidence at Trial

CSS argues that there was insufficient evidence for the jury to find that but for unlawful retaliation, Ms. Hawkins would not have been fired. To support this, CSS argues that although people may still have performed accounts payable functions after the implementation of Cerner, the full-time accounts payable role was totally eliminated, a position CSS has maintained throughout this litigation. (Docket No. 265 at 6). CSS also argues that the timing of Ms. Hawkins' elimination does not equate to retaliation in response to the filing of her lawsuit and that the jury's failure to find that CSS violated FMLA regulations undermines the jury's finding that CSS retaliated against Ms. Hawkins. (Docket No. 265 at 13).

The evidence at trial may have been close, but there is nothing to suggest "a complete absence of pleading or proof." Jackson, 518 F.3d at 392 (quoting Quanex Corp., 191 F.3d at 657). Ms. Watson testified that CSS "did not totally get rid of the accounts payable functions." (Trial Transcript for January 5, 2016 at 16:37:49, No. 3:12-cv-01125). Ms. Watson also testified that in February 2013, when Ms. Hawkins was terminated, Ms. Watson believed the accounts

payable job was going to be eliminated or transferred to Texas, but that she learned otherwise in mid-March 2013. (Id. at 16:40:13-16:43:11). Furthermore, Ms. Watson testified that Vicki Harrington and Joyce Cooper, two white CSS employees, lost their jobs as a result of the Cerner implementation but were offered other positions very quickly. (Id. at 16:55:07). Yet, Ms. Hawkins was never offered another job. (Id. at 16:55:13).

Ms. Harrington testified that she worked at CSS before the introduction of Cerner and was able to keep her job after the introduction of the computer program. She testified that she spends about 60% of her job doing accounts payable work and that it is her main job. (Trial Transcript for January 5, 2016 at 15:59:56 &16:02:14). She also testified that much of her job duties now are the same duties that Ms. Hawkins performed when Ms. Hawkins was employed by CSS. (Id. at 16:10:34-16:13:57).

Mr. Corey Ridgway, former President and board member of CSS, testified that he was aware of a man named Josh Landis who performed the accounts payable functions at CSS while Ms. Hawkins was out on maternity leave. (Trial Transcript for January 6, 2016 at 13:30:15, No. 3:12-cv-01125). In spite of Mr. Ridgway's insistence that Ms. Hawkins' full-time accounts payable position was eliminated, Mr. Ridgway reaffirmed an earlier statement of his that "if Ms. Harrington's job functions [post-Cerner] were exactly the same as those functions that were performed by Ms. Hawkins when she was performing the accounts payable position" he would say that Ms. Hawkins' position was not eliminated. (Id. at 13:35:15-13:35:56). Furthermore, Mr. Ridgway testified that although he had previously filed an affidavit swearing that he had personal knowledge of the situation concerning Ms. Hawkins' job, he actually now had no personal knowledge of which accounts payable functions were being eliminated and instead relied on the advice of "experts." (Id. at 13:43:29-13:44:30 & 13:53:38-13:55:30).

The Court is not in a position to determine the credibility of the witnesses. The jury could reasonably have chosen to discredit Mr. Ridgway's testimony that he believed the accounts payable role to be eliminated; it could have believed that Ms. Harrington performed the functional equivalent to Ms. Hawkins' accounts payable job after the Cerner implementation and that this showed retaliation against Ms. Hawkins; it could have determined that Ms. Hawkins' filing of this suit was a factor in CSS's decision to offer Ms. Harrington and Ms. Cooper alternative positions while refusing to do so for Ms. Hawkins. It was also not unreasonable for the jury to find that retaliation three months after the protected activity was close enough in time to constitute causal connection. See Imwalle v. Reliance Med. Prods., 515 F.3d 531, 550 (6th Cir. Ohio 2008) (finding three months between plaintiff's filing of an EEOC complaint and the employer's act of retaliation close enough in time to constitute causal connection). Finally, the jury could reasonably have determined that after Ms. Harrington and Ms. Cooper were given alternative positions there was no more room to give Ms. Hawkins an alternative position as well, which would make the jury's findings regarding the Title VII or § 1981 claims and FMLA claims not inconsistent. Based on the evidence at trial, it was not unreasonable for the jury to decide the way that it did. Accordingly, the Court will deny CSS's Motion for Judgment as a Matter of Law on the issue of retaliation. (Docket No. 264).

    C. CSS's Motion for Judgment as a Matter of Law on Punitive Damages (Docket No. 266)

    **1. Legal Standard for Punitive Damages**

In this case, the jury rendered a verdict that Plaintiff "proved by a preponderance of the evidence that the Defendant . . . terminated her in retaliation for engaging in protected activity under Title VII, § 1981, or the THRA (Tennessee Human Rights Act), and that retaliation was with malice or reckless indifference to Plaintiff's protected rights." (Docket No. 253 at 1).

7

Although punitive damages are unavailable under the THRA in all cases other than those involving discriminatory housing or malicious harassment, Reagan v. City of Knoxville, 692 F. Supp. 2d 891, 908 (E.D. Tenn. 2010), "[t]he United States Supreme Court has unequivocally declared that punitive damages are available under Title VII and Section 1981." Pendleton v. Bob Frensley Chrysler Jeep Dodge Ram, Inc., 2016 U.S. Dist. LEXIS 66219, *36 (M.D. Tenn. May 19, 2016) (citing Kolstad v. Amer. Dental Ass'n, 527 U.S. 526, 529-30 (1999) and applying it to both Title VII and Section 1981 claims). "Such damages, though, are limited to cases in which the employer has engaged in intentional discrimination and has done so with malice or with reckless indifference to the federally protected rights of an aggrieved individual." Id. (internal quotations omitted).

Malice or reckless indifference is the first part of the three step test established in Kolstad for determining the availability of punitive damages. Kolstad, 527 U.S. at 529-530; New Breed Logistics, 783 F.3d at 1072; Fischer v. United Parcels Serv., Inc., 390 Fed. App'x. 465, 473-75 (6th Cir. 2010). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Kolstad, 527 U.S. at 535; see also New Breed Logistics, 783 F.3d at 1072 (holding that plaintiff presented sufficient evidence to survive summary judgment on punitive damages demand where evidence was presented to show that defendants subjected plaintiffs to harassment and then terminated plaintiffs after plaintiffs filed complaints). "Applying this standard in the context of § 1981a, an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." Kolstad, 527 U.S. at 536.

After establishing malice or reckless indifference, "the plaintiff must impute liability to the employer by establishing that the discriminatory actor worked in a managerial capacity and acted within the scope of his or her employment. Third, the defendant may nevertheless avoid punitive damage liability by showing that it engaged in good faith efforts to comply with Title VII." Pendleton, 2016 U.S. Dist. LEXIS 66219, *37; see also New Breed Logistics, 783 F.3d at 1072; Fischer, 390 Fed. Appx. at 473-75.

Claims under Title VII are subject to caps on punitive damages while claims under Section 1981 are not. 42 U.S.C. § 1981a(b)(3) ("The sum of the amount of compensatory damages awarded under this section . . . and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party— in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000[.]"); see also 42 U.S.C. § 1981a(b)(4) ("Nothing in this section shall be construed to limit the scope of, or the relief available under, section 1981 of this title."); Hall v. Consol. Freightways Corp. of Delaware, 337 F.3d 669, 672–73 (6th Cir. 2003) ("For plaintiffs who did not obtain compensatory or punitive damages under 42 U.S.C. § 1981, but prevailed in a Title VII case other than one relying on a disparate impact theory of discrimination, § 1981a permits but limits such awards."). "[A] court may render judgment as a matter of law as to some portion of a jury award if it is compelled by a legal rule or if there can be no genuine issue as to the correct calculation of damages." Lulaj v. Wackenhut Corp., 512 F.3d 760, 766 (6th Cir. 2008).

### 2. CSS's Argument and Evidence at Trial

Defendant CSS requests judgment as a matter of law on punitive damages for three reasons: (1) the evidence did not show that CSS acted in the face of a perceived risk that its

9

actions would violate federal law; and, therefore CSS did not act with malice or reckless indifference to Ms. Hawkins' protected rights; (2) CSS made a good faith effort to comply with employment discrimination laws; and (3) the jury's verdict that Ms. Hawkins did not prove her FMLA claim further illustrates both of the first two reasons. (Docket No. 267 at 9-12).

CSS's arguments on the punitive damages issue fail for largely the same reasons its arguments regarding liability for retaliation failed above. This Court is not in a position to determine the credibility of witnesses; while one jury may have taken Ms. Watson's and Mr. Ridgway's testimony to mean they had good faith beliefs that Ms. Hawkins' position was in fact eliminated, this jury seemingly viewed their testimony differently. It is possible that the transfer of Ms. Cooper and Ms. Harrington, both white women, discredited Mr. Ridgway's testimony in the eyes of the jury and suggested malice or reckless indifference. It is also possible that the jury found reckless indifference in CSS's termination of Ms. Hawkins in light of the previous EEOC complaints of which the jury was aware. (Trial Transcript for January 8, 2016 at 09:35:39, No. 3:12-cv-01125). Further, the jury discrediting Mr. Ridgway's testimony could have resulted in the jury members finding that CSS failed to undertake good faith efforts to comply with federal laws proscribing employment discrimination. This is especially true given that Mr. Ridgway, as previously stated, directly contradicted some of the information he submitted in his prior sworn statements. Finally, as stated above in regards to the apparent conflict among the FMLA, Title VII, and Section 1981 claims, the jury could have determined that after Ms. Harrington and Ms. Cooper were offered other forms of employment, there was no position available for Ms. Hawkins. In other words, but for the retaliation of choosing the two white women over the black woman, Ms. Hawkins would have had an alternate, equivalent position of employment upon her

return. Because of these reasons, the Court will deny CSS's Renewed Motion for Judgment as a Matter of Law on the issue of punitive damages. (Docket No. 266).

## II. Motion for a Remittitur

In addition to filing a Renewed Motion for Judgment as a Matter of Law, CSS also filed a Motion for a Remittitur on the issue of punitive damages. (Docket No. 266).

### A. Legal Standard for Remittitur

"A district court should not grant a motion for a remittitur unless a jury's award 'is: 1) beyond the range supported by proof; 2) so excessive as to shock the conscience; or 3) the result of mistake.'" Szeinbach v. Ohio State Univ., 820 F.3d 814, 820 (6th Cir. 2016), cert. denied, 137 S. Ct. 198 (quoting Denhof v. City of Grand Rapids, 494 F.3d 534, 547 (6th Cir. 2007)). "Remittitur is not appropriate simply because an award is extremely generous; rather, it is allowed only when an award is grossly disproportionate to the adduced evidence." Chapman v. AmSouth Bank, No. 1:04-CV-237, 2005 WL 3535150, at *4 (E.D. Tenn. Dec. 22, 2005) (internal quotations omitted). "In making its determination, the court must review the evidence in a light most favorable to the prevailing party. . . . A court's decision to grant or deny remittitur is reversible only for abuse of discretion." Id. "'[T]he district court abuses its discretion in ordering either a remittitur or new trial when the amount of the verdict turns upon conflicting evidence and the credibility of witnesses.'" Wallace v. FedEx Corp., 764 F.3d 571, 593 (6th Cir. 2014) (quoting Farber v. Massillon Bd. of Educ., 917 F.2d 1391, 1395 (6th Cir. 1990)).

### B. CSS's Motion for a Remittitur on the Issue of Punitive Damages (Docket No. 266)

CSS makes three arguments in regards to punitive damages in its motion for a remittitur. First, CSS argues its conduct was not so reprehensible as to warrant the amount of punitive damages awarded by the jury. (Docket No. 267 at 13). Second, CSS argues that the amount of

11

punitive damages is not reasonable in relation to the compensatory damages awarded. (Id. at 14). Finally, CSS argues that the punitive damages amount is excessive when compared with civil penalties in comparable cases. (Id.). For the following reasons, the Court finds that although punitive damages are warranted, a remittitur is appropriate because a punitive damage amount of $292,902.20 is beyond the range supported by proof and is excessive.

The Sixth Circuit follows a three step test to determine whether punitive damages are excessive. See Gibson v. Moskowitz, 523 F.3d 657, 664 (6th Cir. 2008). These factors are:

> (1) the degree of reprehensibility of the conduct;
> (2) the disparity between the harm suffered by the plaintiff and the punitive damages award; and
> (3) the difference between the punitive damages and the civil penalty imposed in comparable cases.

Gibson, 523 F.3d at 664 (citing BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 574-75 (1996)).

For the first factor, reprehensibility, CSS directs the Court to the factors listed in Clark v. Chrysler Corp., 436 F.3d at 601 (6th Cir. 2006) that courts should consider when determining reprehensibility in the punitive damages context. (Docket No. 267 at 13).

> (1) the harm caused was physical as opposed to economic;
> (2) the wrongful conduct evinced an indifference to or a reckless disregard of the health or safety of others;
> (3) the target of the conduct had financial vulnerability;
> (4) the conduct involved repeated actions or was an isolated incident; and
> (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident.

Clark, 436 F.3d at 601. "The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003). Only two of these factors weigh in Ms. Hawkins' favor: her financial vulnerability while out on unpaid maternity leave, and the previously discussed malice or trickery that the jury
12

determined existed. Consequently, nearly $300,000 in punitive damages is excessive due to the lack of any physical harm, disregard for the health or safety of others, or repeated acts.

Second, the disparity between the harm suffered by Ms. Hawkins and the amount of punitive damages is large. The jury found that even if Ms. Hawkins had not been fired on March 1, 2013 due to retaliation, she would have been fired on August 28, 2013. (Docket No. 253). This equates to losing about six months' worth of pay, or $20,000 in Ms. Hawkins' case. This is far less than the punitive damages awarded.

Furthermore, a punitive damages award of ten times the amount of back pay awarded suggests the award is excessive. See Tisdale v. FedEx Corp., 415 F.3d 516, 534 (6th Cir. Tenn. 2005) ("Because backpay awards under Title VII serve a similar purpose as compensatory damages awards under the common law, courts have held they may be considered in determining the appropriate size of a punitive damages award."). "Single-digit multipliers are more likely to comport with due process[.]" Campbell, 538 U.S. at 425; see also Bridgeport Music, Inc. v. Justin Combs Pub., 507 F.3d 470, 488 (6th Cir. 2007) (finding a ratio of 9.5:1 too large). The United States Supreme Court has cited a 4:1 ratio when discussing the appropriate relationship between punitive and compensatory damages, although the Court has routinely "been reluctant to identify concrete constitutional limits on the ratio[.]" Campbell, 538 U.S. at 424; see also Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 23-24 (1991); Gore, 517 U.S. at 581.

Finally, although punitive damages under Section 1981 are not subject to a cap like Title VII punitive damages, the cap imposed on Title VII damages is instructive. See Williams v. ConAgra Poultry Co., 378 F.3d 790, 798 (8th Cir. Ark. 2004) ("We do not hold that there is any constitutionally required ratio between § 1981 damages awards and the Title VII cap, but so huge a discrepancy when coupled with the other infirmities that we discern in this award is telling and

hard to ignore."). In this situation, the punitive damages are almost three times the amount allowed under the Title VII cap applicable to this situation. See 42 U.S.C. § 1981a(b)(3).

Together, these factors suggest that the 10:1 ratio used by the jury to award a punitive damages amount of $292,902.20 is excessive. The Court finds that a ratio of 7.5:1 is more appropriate. Consequently, the Court will grant CSS's motion for a remittitur.

**III.    Motions for a New Trial**

CSS filed two motions for new trials; it requests a new trial on the issue of liability for retaliation as well as the applicability of punitive damages. (Docket Nos. 264 & 266).

A. <u>Legal Standard for a Motion for a New Trial</u>

Motions for a new trial are governed by Rule 59 of the Federal Rules of Civil Procedure. Rule 59 provides that "[t]he court may, on motion grant a new trial . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P. 59(a). The Sixth Circuit has "interpreted Rule 59 to mean that a new trial is required only when "a jury has reached a seriously erroneous result as evidenced by . . . (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." <u>Jones v. Nissan N. Am., Inc.</u>, 438 F. App'x 388, 396 (6th Cir. 2011) (quoting <u>Mike's Train House, Inc. v. Lionel, L.L.C.</u>, 472 F.3d 398, 405 (6th Cir.2006)). "When presented with conflicting evidence, credibility and factual determinations are properly left for the jury to resolve." <u>Chandler v. Specialty Tires of Am. (Tennessee), Inc.</u>, 283 F.3d 818, 824 (6th Cir. 2002). Whether to grant a new trial is within the discretion of the trial judge. <u>Gaperini v. Center for Humanities, Inc.</u>, 518 U.S. 415, 433 (1996).

B. CSS's Motion for a New Trial on the Issues of Both Retaliation and Punitive Damages

CSS's arguments on its Motions for a New Trial are largely the same as the arguments contained in CSS's Motions for Judgment as a Matter of Law, where CSS requests new trials as an alternative remedy. For the reasons discussed above, the Court finds that the punitive damages awarded in this case are excessive. Seeing as excessive damages is one reason for a district court to grant a new trial, the Court will conditionally grant CSS's Motions for a New Trial on both liability and punitive damages. If Ms. Hawkins refuses the previously discussed remittitur, this case will be rescheduled for trial on the issues of liability for retaliation and punitive damages.

## **CONCLUSION**

For the foregoing reasons, the Court will deny CSS's Motions for Judgment as a Matter of Law on the issues of liability for retaliation and punitive damages. (Docket Nos. 264 & 266). CSS's Motion for Remittitur, (Docket No. 266), will be granted. The Court will recommend a remittitur in the amount of $73,225.55, which will reduce the punitive damages award to $219,676.65. If Ms. Hawkins chooses to reject this remittitur, the case will be rescheduled for a new trial on both the issue of liability for retaliation as well as punitive damages.

A separate order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE